506 So.2d 619 (1987)
Robert S. BUTLER
v.
Joseph R. GERACE, James M. Buford, and Basil H. Hall, Members of the Board of Review for the Louisiana Office of Employment Security and Ochsner Hospital.
No. CA-6734.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1987.
Perry R. Staub, Jr., Walter M. Hart, III, Monroe & Lemann, New Orleans, for defendants-appellees.
Marian M. Hamilton, New Orleans Legal Assistance Corp., New Orleans, for plaintiff-appellant.
Before GULOTTA, BYRNES and Robert L. LOBRANO, JJ.
LOBRANO, Judge.
Robert Butler (Butler) brought this action for judicial review of a decision of the Board of Review of the Louisiana Office of Employment Security which declared him ineligible for unemployment compensation following his dismissal on April 30, 1985. The trial court upheld the board's decision.
The standard of appellate review in cases such as this is set forth in LSA R.S. 23:1634 which provides in pertinent part that "... findings of the Board of Review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court (on appeal) shall be confined to questions of law ..."
In explaining this standard our Supreme Court has held, "... there must be legal and competent evidence to support the factual findings on which the administrative determination turns." Banks v. Administrator of the Department of Employment, 393 So.2d 696 (La.1981) at 699. Thus judicial review of the findings of the Board of Review in unemployment compensation cases is limited to first, determination of whether the facts are supported by competent evidence, and second, whether the facts, as a matter of law justify the action taken.
*620 Our review of the record shows the following factual situation. Butler was employed by Ochsner Hospital as an orthopedic technician from January 30, 1969 until April 30, 1985. The incident which led to plaintiff's termination occurred as a result of violation of Ochsner's "on call policy."
Pursuant to his employment contract with Ochsner, Butler's schedule included both regular working hours, and every third weekend or so hours of emergency "on call" duty, both of which was compensated by Ochsner. While "on call", Ochsner employees are not required to stay on hospital premises, but are expected to be in the hospital within twenty minutes of being called.[1]
At approximately 11:30 p.m. on the evening of Saturday, April 27, 1985, a patient arrived via ambulance at the Ochsner emergency room after sustaining a right hip fracture. The attending physician ordered the patient to be placed under traction as a prelude to surgery. The Ochsner night supervisor, at 12:35 a.m., paged the orthopedic technician, Butler, who was on call that night. Butler responded to this page at 12:50 a.m. and stated "that he was on his way." When Butler had not arrived at the hospital by 1:35 a.m., the night supervisor paged him a second time. At 1:40 a.m., Butler again responded, I'm on my way, but offered no further explanation for his tardiness. Butler finally arrived at the hospital at 2:10 a.m., stating that he had gotten held up behind a traffic accident on the I-10 at Downman Road in New Orleans East.
Susan McFarland, head nurse of the emergency department, summarized Butler's actions as follows:
"More than 1½ hours elapsed from the time the Ortho Tech (Butler) was notified until his arrival in the E.D. This delay in traction application could have caused a significant neurovascular compromise in the patient's right lower extremity, further complicating an already serious condition. Also, the discomfort of Ms. Ketelsen as well as the aggravation that she and her family were experiencing during the long wait was substantial."
The record further shows that on two prior occasions, namely May 23, 1980 and January of 1984, Butler had been guilty of a similar violation of "on call" policy. Those violations resulted in a one day suspension and warnings of termination for future violations.
In defense of his actions before the Board of Review, Butler claimed that he responded to the call as quickly as possible. His testimony is that a traffic jam at the junction of I-10 and I-610 prevented a more rapid response.
The Board of Review weighed the testimony of all concerned and concluded that Butler's action in failing to respond constituted misconduct so as to preclude benefits.
Butler argues in this Court that the evidence fails to substantiate willful misconduct, and that the Board's decision was factually incorrect.
Although we note that there are factual errors in the Board's opinion, we still conclude the evidence supports their decision. The Board states that the April 27, 1985 incident was Butler's fourth violation, when in fact the record supports only two prior violations. The Board also states Ochsner's investigation showed no accidents on the I-10, whereas the testimony of Marie Gardner indicates that there were two accidents on I-10 East the first at 1:47 a.m., and the second at 3:44 a.m.
Our jurisprudence has defined misconduct within the intent of La.R.S. 23:1601(2) as meaning:
"... an act of willful or wanton disregard of the employer's interest; a deliberate violation of the employer's rules; a disregard of standards of behavior which the employer has a right to expect of his employee; or negligence in such degree or recurrence as to manifest culpability, wrongful interest, or evil design, or show an intentional and substantial disregard of the employer's interest or of *621 the employee's duties and obligations to the employer." Black v. Sumrall, 413 So.2d 252 (La.App. 4th Cir.1982), at 253.
The record supports the fact that Butler placed himself at a site quite distant from his home and the hospital.[2] Even without the possibility of traffic problems, he would have had difficulties reaching the hospital within the allotted twenty minutes. His response to the first call took nearly half his allotted time. The issue of the accident causing his delay is also questionable. He claims the accident was on I-10 at its junction with I-610. The record shows on the night in question he told the personnel at Ochsner it happened at I-10 and Downman Road. He was called a second time at 1:35 p.m., and responded at 1:40 that "he was on his way". No explanation of a traffic problem was mentioned at that time. In addition, it is doubtful he could have gotten out of the traffic snarl on the interstate and returned the hospital's call within five minutes.
Butler was warned previously about tardiness when on call. In the area of health care, tardiness can result in serious complications. We therefore conclude that the record supports the decision of the Board of Review and the lower court.
AFFIRMED.
NOTES
[1] Butler claims he thought the policy was thirty minutes, and the Board of Review's decision states 30 minutes. However, Ochsner's "Inter-Departmental Policy" memorandum states twenty minutes.
[2] According to the record Butler was at a relative's home in New Orleans East on the night in question. Ochsner Hospital is west of New Orleans.